IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 3:98-00038 |
| v. | ) | |
| | ) | |
| | ) | Judge Nixon |
| | ) | |
| DONNELL YOUNG. | ) | |

### ORDER AND MEMORANDUM

Pending before the Court is Defendant Donnell Young's Combined Motion to Dismiss the Indictment, to Dismiss the Government's Request for the Death Penalty, and to Enjoin the State of Oklahoma from Prosecuting the Defendant Due to Unreasonable Pretrial Delay Resulting in a Violation of the Defendant's Sixth Amendment Right to Speedy Trial (Doc. No. 2027) and the Governments Response thereto (Doc. No. 2043). The issue is whether a six-year delay between Defendant Young's indictment and trial constitutes a violation of his Sixth Amendment right to a speedy trial. The Court holds that it does not, and the Defendant's Combined Motion to Dismiss is DENIED.

### I. BACKGROUND

Woody Pilcher (a.k.a. "Screwloose") was murdered on August 2, 1997 in Oklahoma. Two weeks later Defendant Young was arrested in the city of Los Angeles for this murder, and then held in the custody of the State of Oklahoma on pending state murder charges. This case

was initiated by the United States Government ("Government") in March 1998 with the Indictment of co-defendant Eben Payne. (Doc. No. 4.) On November 20, 1998 the federal grand jury returned the Second Superseding Indictment against Young and nineteen other defendants. (Doc. No. 164.) In that indictment Young was charged with one drug conspiracy count. On November 30, 1998, a federal magistrate judge ordered that Defendant Young be moved into federal custody in the Middle District of Tennessee to face the pending federal drug charge. (Doc. No. 168.) Defendant Young was subsequently indicted on federal murder charges on September 30, 1999 in the Fourth Superceding Indictment. (Doc. No. 634.)

This trial has been continued numerous times. First, on March 5, 1999, co-defendant Payne moved to continue the trial then set for April 13, 1999. (Doc. No. 376.) While that motion was pending co-defendant Janice Kittrell also filed a motion to continue. (Doc. No. 341.) At that time, co-defendant Dwayne Belyue was the only one to object to the continuance on speedy trial grounds. (Doc. No. 394.) The Government claims, and Defendant Young does not contradict, that Defendant Young did not object to the continuance. The trial was continued to June 8, 1999. (Doc No. 383.)

On March 23, 1999, Defendant Young filed a motion to sever himself from the nineteen other defendants, and made his first–and only–pro forma demand for a speedy trial. (Doc. Nos. 413, 414.) Before ruling on Young's motions, the Court granted co-defendant Payne's second motion to continue, re-setting trial for July 27, 1999. (Doc. No. 420.) On June 9, 1999, Defendant Young requested appointment of new counsel, which the Court granted on July 26, 1999. (Doc. Nos. 510, 576.) The Court denied Defendant Young's Motion to Sever on July 12, 1999. (Doc. No. 540.)

On July 20, 1999, co-defendant Lameisha Anderson moved to continue the trial until at least October 1999. (Doc No 552.) The Government did not oppose the motion, and responded with added reasons to continue the trial, including Defendant Young's recent change of counsel. (Doc. No. 555.) Co-defendant Derrick Eatmon objected to the continuance, and specifically advised the Court that he did not waive speedy trial. (Doc. No. 559.) Again, Defendant Young did not object. The Court granted co-defendant Anderson's motion and trial was continued to October 19, 1999. (Doc. No. 571.)

On October 18, 1999, co-defendant Payne, a member of a joint defense agreement with Defendant Young, moved again to continue the trial. (Doc. No. 664.) Consistent with his past actions, Defendant Young did not file any objection. Again, on February 15, 2000, co-defendant Jamal Shakir, another member of the joint defense agreement, moved to continue the trial. (Doc. No. 826.) Co-defendant Shakir's motion specifically noted that defendants Young and Payne also joined the motion to continue. The Court reset trial for August 22, 2000. (Doc. No. 834.)

On July 20, 2000, Defendant Young himself moved to continue the trial. (Doc. No. 936.) The Government did not object to his motion and the Court granted and re-set trial for February 13, 2001. (Doc. No. 938.) On January 31, 2001, the Government filed a motion to continue the trial, arguing principally that the various defendants were not prepared for trial. (Doc. No. 1020.) Defendant Young agreed that he was not prepared for trial, and advised the Court of his intention to file a motion to dismiss or preclude the death penalty. In his response Defendant Young also asked the Court to set trial for Spring 2002 at the earliest, stating that was a "realistic" trial date in view of the complexity of the case and Young's alleged difficulty in obtaining funding. (Doc. No. 1025.) Therefore, Defendant Young requested an even longer

3

delay than the Government. In consideration of Defendant Young's request, the Court re-set the trial date for July 22, 2002. (Doc. No. 1303.)

On February 14, 2001, Defendant Young filed a motion to dismiss. (Doc. No. 1032.) The primary basis for Defendant Young's request for dismissal was the denial and delay of funding. Subsequently, on May 22, 2001, Defendant Young filed a Motion for Reconsideration of Pre-Trial Detention, requesting the Court to release him on bond. (Doc. No. 1095.) In that motion Defendant Young made no reference to his Sixth Amendment right to speedy trial. The Court then continued the trial a seventh and eighth time at the request of co-defendant Pacia Shakir. (Doc. Nos. 1365, 1368, 1445, 1463.) This resulted in a trial date of May 20, 2003. Defendant Young did not object to either of these continuances.

The Government gave Notice of Intent to Seek the Death Penalty against defendants Young, Payne, and Shakir on October 29, 2002. (Doc. Nos. 1460-62.) On February 12, 2003, co-defendant Shakir filed a motion to change venue to California, and Defendant Young joined in that motion on March 7, 2003. (Doc. Nos. 1503, 1517.) The Court set a hearing for this, and other pending venue motions, for May 16, 2003, which was continued to May 20, 2003, and then again to June 4, 2003, after the Court requested additional briefing. (Doc. Nos. 1526, 1528, 1535.) On November 24, 2003, while the venue motion was pending, Defendant Young requested severance for the second time. (Doc. Nos. 1577, 1578.) No where in his twenty-seven page memorandum or its thirty-four pages of attachments are speedy trial concerns mentioned. The Court granted Defendant Young's motion to sever from co-defendants Shakir and Payne on July 1, 2004. In granting that motion, however, the Court did not base its decision on Defendant Young's arguments, but on problems with co-defendant Shakir's defense team and concerns with

4

co-defendant Payne's competency. Due to the severance, the Court set Defendant Young's trial for June 20, 2005. (Doc. No. 1714.)

In December 2004, Defendant Young requested the Court to order separate guilt and penalty juries. (Doc. No. 1783.) The Court promptly heard arguments on Defendant Young's motion on January 18, 2005, permitted further briefing, and then granted Defendant Young's motion on April 25, 2005. (Doc. No. 1918.) The Government appealed the Court's decision, and filed a motion to stay the trial pending resolution of that appeal. (Doc. Nos. 1924, 1925.) The Court denied the motion to stay as moot, given that it had *sua sponte* reset the trial date to October 18, 2005. (Doc. No. 1938.) Defendant Young filed a motion to expedite appeal, with which the Government concurred. The Sixth Circuit granted the motion to expedite and recently issued its opinion on the bifurcation issue on September 29, 2005, vacating and remanding this Court's order. United States v. Young, 424 F.3d 499 (6th Cir. 2005).

On September 27, 2005, Defendant Young filed his current Combined Motion to Dismiss, requesting that the Court dismiss the indictment, dismiss the death penalty, and enjoin the State of Oklahoma from prosecuting the Defendant.

## II. ANALYSIS

The Sixth Amendment to the Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial . . . ." A general reading of this provision gives little guidance to courts on how to apply it in individual cases. Therefore, in Barker v. Wingo, 407 U.S. 514, 530 (1972), the Supreme Court adopted an individualized balancing test in which four factors are weighed: "[1] length of delay, [2] the reason for the delay, [3] the

defendant's assertion of his right, and [4] prejudice to the defendant." The length of delay is a threshold factor, if the Court finds that there has been no presumptively prejudicial delay, then it need not balance the remaining three factors. Id. In United States v. Doggett, 505 U.S. 647, 652 n.1 (1992), the Supreme Court noted that "'presumptive prejudice,' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the Barker enquiry." If the Court reaches the remaining factors, they are to be considered within the context and particulars of each individual case. Barker, 407 U.S. at 522.

A.  **WHEN DOES THE CONSTITUTIONAL SPEEDY TRIAL ANALYSIS START?**

Before applying the Barker test, the Court must determine at exactly which point the delay begins. In this case the issue is whether the speedy trial analysis should begin when Defendant Young was arrested by the State of Oklahoma, initially indicted by the Federal Government on a drug charge, or indicted by the Government on federal murder charges. In United States v. MacDonald, 456 U.S. 1, 10 n.11 (1982), the Supreme Court found that "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign." The Court also made it clear that "no Sixth Amendment right to a speedy trial arises until charges are pending." Id. at 7. Once charges are pending, however, the speedy trial clock starts with the first indictment and is not offense specific. See, e.g., United States v. McDougle, 82 F.App'x 153, 159-60 (6th Cir. 2003) (starting the speedy trial clock at the initial indictment even though a second indictment was filed against the defendant with different charges).

6

Defendant Young requests this Court to start the speedy trial analysis at the time of his state arrest on August 16, 1997, and not when he was indicted on federal charges in November 1998. He claims that although he was in the custody of Oklahoma State, he was being held on behalf of the Federal Government. Furthermore, Defendant Young claims the Federal Government was already investigating its case while he was in state custody, and Oklahoma did not seriously pursue trial in recognition of the Federal Government's investigation. Accordingly, Defendant Young argues that the Oklahoma State arrest was in essence the Federal Government's arrest, requiring the speedy trial analysis to begin at the time of his state arrest. In contrast, the Government believes that the speedy trial analysis should start on September 30, 1999, when the first federal murder charge was brought against Defendant Young.

Oklahoma is considered a separate sovereign, and the speedy trial clock for this pending federal action cannot begin at least until the first federal indictment was submitted. MacDonald, 456 U.S. at 10 n.11. Thus, even though Defendant Young was arrested by the state in August 1997, analysis of his speedy trial claim cannot begin before he was indicted by the Federal Government. Further, the speedy trial clock is not offense specific, as the Government suggests, starting with the first instance of federal murder charges in the Fourth Superceding Indictment. See, e.g., McDougle 82 F.App'x at 159-60. Instead, the analysis must start at the first instance of federal charges brought against the Defendant: at the Second Superceding Indictment containing the drug conspiracy charge. In sum, the Court disagrees with both the Defendant and the Government, and finds that for speedy trial purposes, the analysis regarding any delay begins at the Second Superceding Indictment by the federal grand jury on November 30, 1998.

7

Case 3:98-cr-00038   Document 2119   Filed 12/13/05   Page 7 of 18 PageID #: 1171

B.   **BARKER** FACTORS

   *1.   Length of Delay*

"The length of the delay is to some extent a triggering mechanism." Barker, 407 U.S. at 530. The tolerable delay in each case is dependant upon the particular circumstances found therein, although some delays are considered presumptively prejudicial. Id. at 530-31. Defendant Young points out that the average federal death penalty case goes to trial in about twenty months. (Doc. No. 2027.) In this case, Defendant Young has been awaiting trial since his indictment on November 30, 1998. That equates to just under a six-year delay. The Government concedes there has been a "lengthy period from Young's indictment in federal court and that this period, on its face, appears unusually long." (Doc. No. 2043 at 13.) The Court finds that the six-year delay is presumptively prejudicial and triggers an analysis of the other Barker factors to determine if Defendant Young's Sixth Amendment Rights have been violated.

   *2.   Reasons for Delay*

"The flag that all litigants seek to capture is the second factor, the reason for delay." United States v. Loud Hawk, 474 U.S. 302, 315 (1986). "Pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down." Doggett, 505 U.S. at 656. "Different weights should be assigned to different reasons." Barker, 407 U.S. at 531. On the one hand, deliberate delays to "secure a tactical advantage weigh heavily against the government." United States v. White, 985 F.2d 271, 275 (6th Cir. 1993). On the other hand, certain types of delay will not be considered a violation of the accused's Constitutional rights.

8

Only those periods of delay attributable to the Government or the Court are relevant to the Sixth Amendment speedy trial claim. United States v. Howard, 218 F.3d 556, 564 (6th Cir. 2000) (citing Barker, 407 U.S. at 529). The Court reviews each type of delay separately.

      i.     Co-defendant Shakir's Trial in California

One of the reasons for the delay in the prosecution of the case against Defendant Young, was the pending prosecution of his co-defendant Shakir in California State Court. California refused to cede custody of co-defendant Shakir to the United States until the completion of his prosecution in the state court system. In Cain v. Smith, 686 F.2d 374, 377-79 (6th Cir. 1982), the State of Kentucky continued the trial of Defendant Cain for eleven and a half months until the state completed the prosecution of Cain's co-defendant in order to secure his testimony. The Sixth Circuit did not find a violation of the defendant's right to speedy trial even though the state court intentionally delayed trial in order to gain this tactical advantage.

Here, the Federal Government requested California to cede custody of Shakir, but California refused. Unlike in Cain, the Federal Government did not intentionally delay trial, but was forced to wait for Shakir to be released from the custody of California state court–an entirely different sovereign–so that it could efficiently bring this case against all co-defendants at one time. The facts in the present case weigh more heavily in favor of the Government than the facts of Cain. Further, the delay caused by the Government was due to the Government's desire to increase efficiency and conserve judicial resources, whereas in Cain the state sought to gain a tactical advantage. Accordingly, the delay caused by waiting for co-defendant Shakir to be available was not unreasonable given the circumstances and does not weigh in favor of the

9

Defendant's claim for a violation of his right to speedy trial.

### ii. Defendant's Requested Continuances

When a defendant causes the delay, he cannot protest the period of delay he caused. White, 985 F.2d at 275. Defendant Young's requests for continuances do not absolutely bar him from making this constitutional speedy trial claim, but the resulting delay may not be used to support a speedy trial claim. Howard, 218 F.3d at 561. Defendant Young himself has on one occasion requested a continuance, and at another time he joined in a motion by co-defendant Shakir for a continuance. (Doc. Nos. 826, 936.) This resulted in the trial being postponed for almost nine months from May 2, 2000 until February 15, 2001. These nine months are excluded from the speedy trial consideration.

### iii. Defendant's Unobjected Continuances

Defendant Young not only passively acquiesced to continuances sought by other parties, but knowingly and consciously chose not to object. Barker, 407 U.S. at 532. This trial has been continued nine times, including once at the request of the Government, to which Defendant responded in agreement that he was unprepared for trial. Although other co-defendants objected to the continuances and reasserted their right to speedy trial, Defendant Young never objected. (Doc. Nos. 394, 559.) Furthermore, Defendant has twice specifically indicated he was not ready for trial or would need more time to prepare. As a result, his claim that there has been a violation of his right to speedy trial is less credible.

### iv. Government's Sole Request For A Continuance

Only delays caused by the Government or the Court are considered in the analysis of a speedy trial claim. Howard, 218 F.3d at 564 (citing Barker, 407 U.S. at 529). The Government itself has only requested one continuance in the six years that this case has been pending. In its request, the Government listed various reasons, mostly based on the Defendants' lack of preparation, as grounds for a continuance. Defendant Young responded to this motion not only concurring that he was unprepared for trial, but also requesting a longer continuance. Because Defendant Young agreed to and further lengthened the continuance, the Court cannot accept his present claim that he was prejudiced by the additional time he himself requested. Consequently, this five-month delay is also excluded from the speedy trial consideration.

### v. Government's Appeal

Another cause of delay in this case was the Government's appeal of this Court's order granting Defendant Young's request for a bifurcated jury. "It hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." Loud Hawk, 474 U.S. at 315. "The assurance that motions . . . are correctly decided through orderly appellate review safeguards both the rights of the defendants and the 'rights of public justice.'" Id. at 313. Indeed, any non-frivolous interlocutory appeal may not be considered as part of the delay. In the present case, the Government's appeal was non-frivolous given that the Sixth Circuit Court of Appeals overturned this Court's order granting the bifurcated jury. Thus, the four-month delay caused by this appeal may not be included in considering the alleged violation of Defendant Young's right to a speedy trial.

11

vi. Defendant's Frequent Complex Motions

Defendant asserts that this Court itself has delayed the case by taking too much time to consider the parties' motions. Any time the Court spends deliberating on these numerous complex motions, many of which have been filed by the Defendant, which were critical to his case and the preservation of his Constitutional rights, should be discounted. United States v. O'Dell, 247 F.3d 655, 668 (6th Cir. 2001). Defendant Young admits that he has "promptly and aggressively filed numerous pretrial motions." (Doc. No. 2027 at 21) (emphasis added). Indeed, between Defendant Young's motions and those of his co-defendants, the docket has grown to include over 2000 entries. Defendant Young filed, or joined other co-defendants' filings of, several complex motions on novel issues. After filing or joining these motions, Defendant Young cannot use them to his advantage by claiming that his Constitutional right to a speedy trial has been violated because the Court deliberated on them for too long. These motions required the Court's careful and serious consideration. The time used by the Court in responding to complex motions such as a motion for severance, change of venue, or bifurcated juries should be excluded from considerations of delay with regard to violation of the Defendant's right to a speedy trial. (See, e.g., Doc. Nos. 413, 1577, 1783.)

vii. Government Not at Fault in Delay

There are two ways the Government can be at fault in causing the delay. First, the Government may be faulted if it intentionally and in bad faith delayed trial in order to gain a tactical advantage. This would weigh heavily against the Government. Barker, 407 U.S. at 531. Second, delay may be attributable to the Government if it or the Court was negligent in moving

12

the case forward. Doggett, 505 U.S. at 652-53. The Government has done nothing throughout the pendency of this case that could lead to the conclusion that it has intentionally or in bad faith delayed the trial. As a result, the strongest argument Defendant Young can make is that the Government or the Court has been negligent. In Doggett, a case where there was a six-year-long delay between the indictment and arrest of the defendant, the Court found that the Government had been negligent because "[f]or six years [the Government] made no serious effort [to investigate] . . . and had they done so, they could have found [defendant] in minutes." Id.

This case has been extremely complex, starting with over twenty-five defendants, involving multiple jurisdictions and numerous conspiracy, drug and murder charges. As such, the Government has had to spend significant time investigating and collecting witnesses. The Government has filed non-frivolous pleadings and relatively prompt responses to Defendants' lengthy and complex motions. Similarly, the Court has deliberated and ruled on these motions with due diligence. It is not the case that either the Government or the Court have been negligent with respect to bringing Defendant Young to trial. Ultimately, the Government did not intentionally or negligently delay trial.

### 3. *Assertion of Right to Speedy Trial*

The third Barker factor the Court must analyze is the Defendant's assertion of his right to speedy trial. The Court is permitted to give different weight to speedy trial demands based on the "frequency and force of the objections as opposed to attaching a significant weight to a purely pro forma objection." Id. These assertions of the speedy trial right also "must be viewed in the light of respondents' other conduct." Loud Hawk, 474 U.S. at 314.

13

In March 1999, Defendant Young filed a motion for speedy trial. (Doc. No. 414.) This motion, however, was a pro forma, one line motion. Per Barker, it deserves less weight. Barker, 407 U.S. at 528. In addition, the Court must look to the circumstances surrounding the motion and the Defendant's other conduct. Just prior to Defendant Young's filing of this motion, co-defendant Payne filed for a continuance to which Defendant Young did not object. This is despite the fact that co-defendant Belyue did object on speedy trial grounds. Similarly, there were other requests for continuances, to which Defendant Young either actively joined, acquiesced or did not object. Other co-defendants, in addition to co-defendant Belyue, objected to these continuances, but Defendant Young did not. Had Defendant Young truly been interested in hastening trial, he could have joined in his co-defendant's objections.

In his current motion, Defendant Young mentions several pleadings he believes the Court should consider as assertions of his right to a speedy trial. Defendant Young first cites an objection to the Government's 2001 Motion to Continue Trial. The Court found no objection, but instead a response in which Defendant Young agreed with the Government's assertion that he would not be ready for trial, citing funding issues as the reason. (Doc. No. 1025.) Next, Defendant Young cites his 2001 Motion to Dismiss as an implicit assertion of his right to speedy trial. However, upon review of the motion the Court finds no reference to speedy trial, but instead the basis for his request was again a difficulty in obtaining funding. (Doc. No. 1032.) The Defendant then refers to a Motion for Reconsideration of Pre-Trial Detention Order. (Doc. No. 1095.) According to the Sixth Circuit this request for bond can be considered an assertion of the right to speedy trial. Cain, 686 F.2d at 384. Lastly, Defendant Young mentions a motion in which he requests the Court to compel the Department of Justice to make a decision regarding

14

authorization for the death penalty, so his case could proceed. (Doc. Nos. 1391, 1429.) In making this request, the Court recognizes that Defendant Young was essentially expressing an interest in moving his case forward quickly. Accordingly, the Court finds that Defendant asserted his right to speedy trial on more than one occasion, however given Defendant Young's other actions these assertions are given less weight.

### 4. *Prejudice to the Defendant*

The fourth and final factor articulated by the Supreme Court in <u>Barker</u>, is prejudice to the defendant. <u>Barker</u>, 407 U.S. at 532. The Supreme Court identified three interests that the right to speedy trial attempts to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." <u>Id.</u> "The most important factor under prejudice is the possible impairment of the defense." <u>White</u>, 985 F.2d at 276. This is because the "inability of a defendant adequately to prepare his case skews the fairness of the entire system." <u>Barker</u>, 407 U.S. at 532. The Court will not infer prejudice "[w]hen the government prosecutes a case with reasonable diligence . . . no matter how great the ensuing delay." <u>Howard</u>, 218 F.3d at 564 (citing <u>Doggett</u>, 505 U.S. at 656). In such a case the defendant must show that his defense was prejudiced with specificity. <u>Id.</u> Further, the Sixth Circuit requires an increased showing of "substantial prejudice," if no inference of prejudice is found. <u>White</u>, 985 F.2d at 276.

### i. <u>Government's Reasonable Diligence</u>

The Defendant claims that the delay is so long in this case that he is entitled to an

15

inference of prejudice. Howard, 218 F.3d at 564 (citing Doggett, 505 U.S. at 657). The Court disagrees. As discussed above in Section 2(b)(vii), the Government has not been at fault in the delay, and has prosecuted this case with "reasonable diligence." White, 985 F.2d at 276. As the Government has not acted negligently, Defendant Young must demonstrate actual prejudice.

ii. Delay in Funding

Defendant Young argues that delays in approval and denial of motions for funding have prejudiced his defense. He suggests that the lack of funding caused the eight-month delay in obtaining death penalty authorization, for him and his co-defendants. He also claims that the lack of funding has impeded the investigations necessary for his defense. After reviewing the record, the Court finds that Defendant Young's motions regarding funding generally have been dealt with promptly. While it is true that the Court has not granted each and every request by the Defendant, the Sixth Circuit has approved a substantial amount of funding for the defense. As a result, the Defendant has not suffered "substantial prejudice" due to this alleged delay.

iii. Witnesses

A number of witnesses have died or disappeared during the last eight years. Defendant Young claims that the passage of time will make the remaining Government witnesses more credible, because no juror will expect a witness to remember something clearly in great detail several years later. While this may be the case, "delay is a two edged sword. It is the Government that bears the burden of proving its case beyond a reasonable doubt. The passage of time may make it difficult or impossible for the Government to carry this burden." Loud Hawk,

16

474 U.S. at 315. Consequently, in this respect, both the Government and Defendant Young are equally prejudiced by the delay. Additionally, even though the Defendant may have wished to present live witness testimony because he feels it is more convincing, he is permitted to present mitigating factors in a variety of ways, regardless of its admissibility under the rules governing admission of evidence at criminal trials, and is not required to have live witness testimony. 21 U.S.C. § 848(j) (1996); 18 U.S.C. § 3593(c) (2002).

    iv. <u>Effect on Defendant</u>

Defendant Young argues that the delay has caused him to grow older, giving the jury the illusion that he is a seasoned criminal, as opposed to a young man capable of reform. While it is unfortunate that the Defendant has had to endure this time in jail, the Court does not believe this will prejudice his trial significantly because the jury will be able to follow instructions, and understand that the Defendant allegedly committed these crimes in his youth.

    v. <u>Conclusion</u>

The Court finds that the Government has exercised reasonable diligence in bringing Defendant Young to trial. Defendant Young has not suffered prejudice to his defense due to the delays in funding, and both he and the Government suffer equal prejudice due to the unavailability of witnesses. Consequently, the Court finds that the Defendant has not suffered substantial prejudice due to the delay in bringing him to trial and this factor does not weigh in favor of his speedy trial claim.

Case 3:98-cr-00038   Document 2119   Filed 12/13/05   Page 17 of 18 PageID #: 1181

## III. CONCLUSION

The Supreme Court in <u>Barker</u> outlined a balancing test for Courts to use when analyzing an alleged violation of a defendant's Sixth Amendment Right to a speedy trial. The first factor looks at actual length of time, which in this case is close to six years, and is presumptively prejudicial. The second factor is arguably the most important factor, and examines the reason for the delay. The Court finds that the delay was caused by the complexity and size of the case. The third factor the Court analyzes is whether or not the Defendant asserted his right to speedy trial. Defendant Young did make such assertions, however, the weight given to them is lessened given the small number of assertions relative to the length of the case, and Defendant's other actions throughout its pendency. Lastly, the Court finds that the Defendant was not substantially prejudiced by the delay.

Accordingly, after weighing the <u>Barker</u> factors the Court DENIES the Defendant's Motion to Dismiss based on speedy trial grounds. Furthermore, for the same reasons this Court declines to dismiss the indictment, the Court also DENIES the Defendant's subsequent requests that this Court dismiss the Government's request for the death penalty, and enjoin the State of Oklahoma from prosecuting the Defendant are DENIED.

It is so ORDERED.

Entered this the 12th day of December, 2005.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

Case 3:98-cr-00038   Document 2119   Filed 12/13/05   Page 18 of 18 PageID #: 1182